**GUS T. HANDGE & SON PAINTING COMPANY, Plaintiff,**

v.

**DOUGLASS STATE BANK, Defendant & Third-Party Plaintiff,**

v.

**Alfred SMITH, d/b/a Arrow Painting & Decorating Co., Third-Party Defendant.**

**Civ. A. No. 78–2166.**

United States District Court,
D. Kansas.

July 13, 1982.

---

Robert D. Benham, McAnany, Van Cleave & Phillips, Kansas City, Kan., Richard A. Stockenberg, St. Louis, Mo., for plaintiff.

John Sutherland, Kansas City, Kan., for Douglass State Bank.

Thomas M. Moore, Gould & Moore, Kansas City, Mo., Dana M. Harris, Overland Park, Kan., for Alfred Smith.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court upon plaintiff's motion to dismiss the counterclaim of the third-party defendant.

Plaintiff brought this action against defendant Douglass State Bank to recover the value of certain checks bearing forged endorsements. These checks were drawn by plaintiff on his bank and made payable to various employees. Third-party defendant Alfred Smith, d/b/a Arrow Painting & Decorating Company, apparently endorsed the checks and placed the checks in his own account at Douglass State Bank for his personal use. In its third-party complaint, the Bank seeks indemnity from Smith for any amount recovered by plaintiff from the Bank. The court has previously entered summary judgment on the question of liability in favor of plaintiff against Douglass State Bank and summary judgment in favor of the Bank against third-party defendant Smith on the Bank's indemnity claim. The question of the amount of judgment was left open both as against the defendant and the third-party defendant. After Smith was added to the case, plaintiff filed a cross-claim against Smith for damages arising out of an alleged breach of contract, and subsequently Smith filed a counterclaim against plaintiff for damages on the same contract.

This is a diversity action and does not involve questions of substantive federal law. Plaintiff is a Missouri corporation; defendant Douglass State Bank is a Kansas corporation; and third-party defendant Smith is a Missouri resident.

Plaintiff contends that the court is without jurisdiction to entertain either the counterclaim of Smith against the plaintiff or plaintiff's cross-claim against Smith. Plaintiff argues that the claims based on the alleged breach of contract are independent of, rather than ancillary to, the forged

endorsement claim, and since diversity of citizenship is lacking between plaintiff and third-party defendant, the court is without jurisdiction to consider the counterclaim. [*Citing, Owen Equipment & Erection Company v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), and *National Insurance Underwriters v. Piper Aircraft Corporation, et al.*, 595 F.2d 546 (10th Cir. 1979).] Third-party defendant Smith argues that his counterclaim is a compulsory counterclaim that comes within the doctrine of ancillary jurisdiction discussed in *Owen, supra.*

Both parties agree that there is no *independent* basis for jurisdiction over Smith's counterclaim against plaintiff.

The general rule regarding ancillary jurisdiction is succinctly stated in 6 Wright & Miller, *Federal Practice and Procedure* § 1444 at pp. 223–25:

> The cases on point almost all hold that defendants' claim against a third-party defendant is within the ancillary jurisdiction of the federal courts. Thus, it is well settled that there need be no independent jurisdictional basis for such a claim if diversity of citizenship exists between the original parties. For example, if A of State X sues B of State Y and B attempts to implead C of State Y (or of State X), the courts will accept jurisdiction over the latter claim even though there is no diversity of citizenship between B and C.

The Supreme Court has held that ancillary jurisdiction "is bottomed on the notion that since federal jurisdiction in the principal suit effectively controls the property or fund under dispute, other claimants thereto should be allowed to intervene in order to protect their interests, without regard to jurisdiction." *Aldinger v. Howard*, 427 U.S. 1, 11, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976).

■ The related doctrine of pendent jurisdiction allows a federal court to decide all questions presented by a case properly before it. The landmark case in this area is *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In *Gibbs*, the Court faced the issue of whether and to what extent pendent jurisdiction extended to a plaintiff's parallel state claim against the existing federal defendant. The Court held:

> Pendent jurisdiction, in the sense of judicial *power* exists whenever there is a claim "arising under [the] Constitution, the laws of the United States, and treaties made, or which shall be made, under their authority ...," U.S. Constitution, Article III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court.... The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole.

*Id.* at 725–26, 86 S.Ct. at 1138. (Citations and footnotes omitted, emphasis in original.)

*Gibbs* went on to note that pendent jurisdiction is a matter of judicial discretion and not plaintiff's right. If considerations of judicial economy, convenience and fairness to litigants are not present, the Court warned the federal courts against exercising jurisdiction over the state claims.

*Aldinger* added to the *Gibbs* analysis the requirement that a court faced with the decision whether to exercise its discretionary pendent jurisdiction must not only determine whether Article III of the Constitution permits the exercise of pendent jurisdiction but that Congress by statute has not "expressly or by implication negated its existence." *Aldinger, supra*, 427 U.S. at 18, 96 S.Ct. at 2422.

A further explication of the *Gibbs* doctrine came in *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). In *Owen*, plaintiff, a citizen of Iowa, brought a wrongful death

action against a Nebraska corporation (OPPD). OPPD filed a third-party complaint against Owen Equipment (Owen). Plaintiff amended her complaint to name Owen as an additional defendant. After three days of trial it was learned that Owen's principal place of business was Iowa and not Nebraska as it had been thought. OPPD had been dismissed earlier on a motion for summary judgment. The district court denied Owen's motion to dismiss plaintiff's complaint. The Supreme Court reversed, and held that the district court lacked jurisdiction over the claim between plaintiff and Owen because diversity of citizenship between these two parties was lacking. It is necessary to quote at length from the *Owen* opinion:

> It is true, as the Court of Appeals noted, that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims. But in determining whether jurisdiction over a nonfederal claim exists, the context in which the nonfederal claim is asserted is crucial. See *Aldinger v. Howard*, 427 U.S., at 14 [96 S.Ct., at 2420]. And the claim here arises in a setting quite different from the kinds of nonfederal claims that have been viewed in other cases as falling within the ancillary jurisdiction of the federal courts.
>
> First, the nonfederal claim in this case was simply not ancillary to the federal one in the same sense that, for example, the impleader by a defendant of a third-party defendant always is. A third-party complaint depends at least in part upon the resolution of the primary lawsuit. See n.3, *supra*. Its relation to the original complaint is thus *not mere factual similarity but logical dependence. Cf. Moore v. New York Cotton Exchange*, 270 U.S. 593, 610 [46 S.Ct. 367, 371, 70 L.Ed. 750]. The respondent's claim against the petitioner, however, was entirely separate from her original claim against OPPD, since *the petitioner's liability to her depended not at all upon whether or not OPPD was also liable.* Far from being an ancillary and depend-

ent claim, it was a new and independent one.

> Second, the nonfederal claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in a federal court. By contrast, ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court. A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations. "[T]he efficiency plaintiff seeks so avidly is available without question in the state courts." *Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890, 894 (CA4) [footnote omitted].
>
> It is not unreasonable to assume that, in generally requiring complete diversity, Congress did not intend to confine the jurisdiction of federal courts so inflexibly that they are unable to protect legal rights or effectively to resolve an entire logically entwined lawsuit. Those practical needs are the basis of the doctrine of ancillary jurisdiction. But neither the convenience of litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction to a plaintiff's cause of action against a citizen of the same State in a diversity case. Congress has established the basic rule that diversity jurisdiction exists under 28 U.S.C. § 1332 only when there is complete diversity of citizenship. "The policy of the statute calls for its strict construction." *Healy v. Ratta*, 292 U.S. 263, 270 [54 S.Ct. 700, 703, 78 L.Ed. 1248]; *Indianapolis v. Chase Nat. Bank*, 314 U.S. 63, 76 [62 S.Ct. 15, 20, 86 L.Ed. 47]; *Thomson v. Gaskill*, 315 U.S. 442, 446 [62 S.Ct. 673, 675, 86 L.Ed. 951]; *Snyder v. Harris*, 394 U.S. [332], at 340 [89 S.Ct. 1053, 1058, 22 L.Ed.2d 319]. To allow the requirement of complete diversity to be circumvented as it was in this

case would simply flout the congressional command.

*Owen, supra,* at 375–77, 98 S.Ct. at 2403–04 (emphasis supplied).

The Tenth Circuit applied *Aldinger* and *Owen Equipment* strictly against the exercise of jurisdiction in *National Insurance Underwriters v. Piper Aircraft,* 595 F.2d 546 (10th Cir. 1979). In that case, plaintiff, National Insurance Underwriters, asserted seven alternative claims for relief in its complaint. Jurisdiction was based upon diversity of citizenship, and at the time, the $10,000 amount in controversy requirement controlled. Several of the claims of plaintiff were for less than the requisite amount. The court held that "[j]ust as congressional intent would be circumvented by allowing a plaintiff to bring suit against a non-diverse impleaded defendant, the intent is circumvented by allowing a plaintiff to bring one diversity claim in excess of the minimum amount and join several other defendants by asserting $7,000 claims." *Piper Aircraft, supra,* at 550. The nonexclusivity of the federal forum was extremely important to the court's decision denying jurisdiction.

> This is not a situation where the plaintiff can only bring all of his claims in federal court because of an exclusive grant of jurisdiction, as in *Transok Pipeline Co. v. Darks,* 565 F.2d 1150 (10th Cir. 1977); *Pearce v. United States,* 450 F.Supp. 613 (D.Kan.1978). See *Ayala v. United States,* 550 F.2d 1196 (9th Cir. 1977). Thus, one of the stronger arguments for allowing pendent party jurisdiction is not available here.

*Id.* at 550–51.

The first question we must answer is whether this court has ancillary jurisdiction to hear the plaintiff's cross-claim against the third-party defendant. To do so we must detail the claims asserted by the parties that we have previously summarized. The complaint in this action against defendant Douglass State Bank lists numerous checks which plaintiff drew on Mercantile Commerce Trust Company, payable to various persons in amounts shown in the complaint. Alfred Smith (the third-party defendant) allegedly received these checks and forged the endorsements, then deposited the checks to his account with defendant Douglass State Bank. Plaintiff further alleges that the defendant accepted the checks, credited them to Smith's account and sent them to the drawee bank, Mercantile Commerce Trust Company, where they were paid and charged against plaintiff's account. Plaintiff alleges that Douglass State Bank collected the checks with notice and is therefore liable on a conversion or misappropriation theory to the plaintiff in the amount of $14,105.50. The third-party complaint filed by the defendant against Smith, alleges that Smith warranted to the Bank that he had good title and that there was authority to obtain payment on the checks on behalf of the proper payees. Defendant alleged that under § 84–4–417 of the Uniform Commercial Code, Smith was liable to the defendant for any recovery obtained by the plaintiff against the defendant. The third-party defendant Smith answered the third-party complaint and basically denied the allegations contained therein. As we noted previously, summary judgment has been entered as to liability only in favor of both plaintiff and defendant on the complaint and third-party complaint.

Plaintiff next filed a cross-claim against the third-party defendant which sets forth the contract between plaintiff and cross-defendant and the alleged breaches by Smith in the performance of that contract. The cross-claim alleges that plaintiff Handge entered into a contract with the Kansas Department of Transportation for the painting of a bridge and thereafter, Handge and Smith entered into an agreement under which Smith would subcontract part of the work on this project. Smith then entered into subcontracts with individuals to perform the work. Plaintiff recites that an action is pending in the District Court of Wyandotte County, Kansas, by certain of Smith's employees against Handge, which alleges that they were not paid all wages due and owing. Plaintiff asks for indemnity from Smith for any verdict recovered against Handge in the state action on the

grounds that the checks that are the subject of plaintiff's complaint against defendant Douglass State Bank were issued by plaintiff at Smith's request to pay these employees. Plaintiff then sets forth various particulars in the performance of the contract in which Smith breached the agreement, including delay, damage, and improper cleaning and sandblasting, and prays for judgment against Smith in the amount that Handge is indebted to the Department of Transportation for delay penalties. In addition, Handge alleges that it has become liable to a supplier of paint to Smith who left an amount due the supplier of $15,946.61 for which plaintiff has become liable as a result of its contract and bond with the Department of Transportation.

■ It is clear that plaintiff's cross-claim against third-party defendant Smith is not related to the plaintiff's complaint or dispute with the defendant Bank in the sense of "logical dependence" thereon. Plaintiff's claims against Smith are entirely separate from his original claims against the Bank, since Smith's liability to plaintiff depends not at all on whether Douglass State Bank is also liable. To paraphrase the language from *Owen Equipment,* the cross-claim is far from being an ancillary and dependent claim and is in fact a new and independent one. Additionally, from the allegations in the cross-claim itself, it is apparent that the claim is not only suitable for state court jurisdiction but is in fact already the subject of a state court suit pending in Wyandotte County, Kansas. This is clearly not a case, as in *Owen Equipment,* where plaintiff voluntarily chose to bring the state law claim for indemnity and breach of contract against Smith in the federal court instead of impleading Smith in the state court action. As this claim is not ancillary in the sense that it does not depend upon the resolution of the primary lawsuit in federal court, and arguably is dependent upon the resolution of the lawsuit pending in state court, it is not supportable by ancillary jurisdiction. *Owen Equipment, supra,* 437 U.S. at 375, 98 S.Ct. at 2403.

■ We next must determine whether this court should entertain jurisdiction under the doctrine of pendent jurisdiction. We find this case governed by the Supreme Court's ruling in *Owen Equipment* and the Tenth Circuit's opinion in *Piper Aircraft.* In *Owen Equipment,* the Supreme Court rigidly construed the diversity requirement by Congress as a negation of extended jurisdiction. Since § 1332 is a statutory implication by Congress against jurisdiction, *Aldinger* requires that the *Gibbs* doctrine of pendent jurisdiction not be applied. Just as in *Piper Aircraft,* this is not a situation where plaintiff could only bring all his claims in federal court because of an exclusive grant of jurisdiction. This is a diversity action that solely involves questions of state law, and plaintiff is in fact already a defendant in a state court action that involves the matters contained in his cross-claim against third-party defendant Smith. As plaintiff's cross-claim is not ancillary to the claim asserted against Douglass State Bank, we are of the view that the holding in *Owen Equipment* dictates that we decline to exercise pendent jurisdiction over plaintiff's cross-claim.

■ A further question not posed or answered in the *Owen Equipment* case is also before us, namely the matter of the third-party defendant's counterclaim against the plaintiff. The third-party defendant filed an "answer and counterclaim" to plaintiff's cross-claim. This pleading insofar as it is an answer to plaintiff's cross-claim is mooted by our finding that we have no jurisdiction over plaintiff's cross-claim. However, Smith also filed what was termed a counterclaim against the plaintiff which in substance tracks the cross-claim of plaintiff. Smith denies his own breach in performance of the contract, and alleges that Handge wrongfully terminated the contract and took over completion of performance, thereby breaching the contract. Smith prays for the unpaid balance of $58,394.50 due under the contract and requests an additional $2,500.00 for equipment and supplies leased by Smith for the performance of the contract.

Smith's claims are similarly not dependent in any way upon the resolution of the lawsuit between plaintiff and defendant Douglass State Bank. Whether or not this court has ancillary jurisdiction over the counterclaim depends upon whether the counterclaim is permissive or compulsory. If it is a compulsory counterclaim, this court would have jurisdiction to consider it. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926). If, however, it is a permissive counterclaim under Rule 13(b), it must rest upon an independent ground of federal jurisdiction. *Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd*, 503 F.2d 1193 (10th Cir. 1974) (*Pipeliners*). In that case the court of appeals suggested the following standards by which the compulsory or permissive nature of counterclaims may be determined:

> (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendants' claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute plaintiff's claim as well as defendants' counterclaim? and (4) Is there any logical relation between the claim and the counterclaim?

*Pipeliners, supra*, at 1198.

The logical relation test is the most controlling. *Id.* Applying these guidelines, we hold that the counterclaim of Smith is permissive. The claim and counterclaim raise different issues of law and fact and would require different evidence. Judgment on plaintiff's claim would not bar a subsequent suit for breach of contract. The two claims are not logically related or ancillary to the plaintiff's claim against the defendant Douglass State Bank. Without an independent basis for jurisdiction, we must therefore grant plaintiff's motions to dismiss the third-party defendant's counterclaim as we have no power to exercise pendent jurisdiction in the face of the statutory negation of jurisdiction as discussed above.

Although we recognize the interests of efficiency and economy in favor of exercising pendent jurisdiction in some cases, "that is not the only consideration the federal court should take into account in assessing the presence or absence of jurisdiction." *Aldinger, supra*, 427 U.S. at 14, 96 S.Ct. at 2420 (*quoting Kenrose Mfg. Co. v. Fred Whitaker Co.*, 512 F.2d 890, 894 (4th Cir. 1972). In sum, we are without *ancillary* jurisdiction grounded in either a compulsory counterclaim or in a claim logically dependent upon the main lawsuit, and we do not have the power to exercise *pendent* jurisdiction over the claims between plaintiff and the third-party defendant, since Congress in 28 U.S.C. § 1332 negated jurisdiction as to claims between non-diverse parties. *Owen Equipment, supra; Aldinger, supra.*

IT IS THEREFORE ORDERED that plaintiff's motion to dismiss the third-party answer and counterclaim and plaintiff's cross-claim against the third-party defendant is granted for lack of jurisdiction.